UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| R.H., *a minor, by and through* BRITTANY GUNTER,<br><br>Plaintiff,<br><br>v.<br><br>RACHEL BUFFIN and SHELTER MUTUAL INSURANCE CO.,<br><br>Defendants. | Civil No. 14-150-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties in this case seem to grasp the stratagems of Chinese General Wang Jingze: Choose the field of battle and seize the advantage. The plaintiff in this case, a citizen of Kentucky, chose Pike Circuit Court. The defendants, one of whom is also a citizen of Kentucky, removed the case to federal court, arguing that the plaintiff fraudulently joined the Kentucky defendant simply to defeat diversity jurisdiction. Because the defendants fail to carry the heavy burden required to prove fraudulent joinder, the Court will grant plaintiff's motion to remand. Here, as in war, some fields are not available for battle.

### BACKGROUND

On March 27, 2010, 13-year-old R.H. was riding in a car driven by her mother, Brittany Gunter.[1] R. 1-1 at ¶ 5. The car crashed. *Id.* R.H. suffered various injuries. *Id.* at ¶ 30. Gunter filed an insurance claim with Shelter Mutual Insurance Co. ("Shelter"), noting that R.H. suffered from "pain in [her] right shoulder, head, [and] back." R. 4-4. When

---

[1] At the time of the accident, Brittany Gunter's last name was "Gibson." *See* R. 9 at 2, n.1.

Gunter reported "a lot of pain" and continuing "sore[ness] from the accident," Shelter's claims adjuster, Rachel Buffin, offered Gunter a $1,600 settlement. R. 4-5 at 1. Gunter initially refused, explaining to Buffin that R.H. was "really injured and in pain." *Id.* Once Buffin told Gunter that the settlement was only for R.H.'s bodily injury claim and not for R.H.'s personal injury claim, Gunter accepted Buffin's offer. *Id.* That same day, Buffin mailed the settlement check and a form called "Indemnifying Release (Minors)." *Id.*; R. 1-1 at 3–4. But contrary to what Buffin told Gunter, the release purported to "fully settle[] and discharge[] all claims against [Shelter]," not just the bodily injury claim. R. 1-1 at 4. The release further stated that the claimant agrees to "reimburse any loss, damage, or costs that [Shelter] pays if any litigation arises from these injuries." *Id.* When, eleven days later, Buffin noted that the check cleared and no new medical bills had arrived, she "closed [the] claim." R. 4-5 at 1.

Shortly after, R.H. filed this suit in state court. *See* R. 1-1. Of the ten claims R.H. filed against Shelter, only five also named Buffin as a defendant: Negligence/Gross Negligence, Fraud in the Inducement, Fraud by Omission, Intentional Infliction of Emotional Distress, and Negligent Misrepresentation. *Id.* In particular, R.H. claims that Buffin committed fraud and made false representations in the terms and description of the release form. R. 1-1 at ¶ 58. R.H. also asserts that Buffin and Shelter committed fraud by omission by settling a claim of less than $10,000 with a minor without a court order, in violation of KRS § 387.280. R. 1-1 at ¶ 56.

The defendants filed a notice of removal, invoking federal diversity jurisdiction. R. 1. They acknowledge that both Plaintiff R.H. and Defendant Buffin are citizens of Kentucky.

2

*Id.* They contend, however, that the Court should ignore Buffin's citizenship for diversity purposes because R.H. fraudulently joined her to this suit. *Id.* at 2–3. Among their arguments, the defendants maintain that Kentucky law permits claims against insurance companies—and, presumably, against insurance adjusters—only for bad faith. R. 9 at 10. Because the claims against Buffin do not include a claim for bad faith, the defendants argue that "there is no colorable basis" for bringing an action against Buffin. R. 1 at 2; *see also* R. 9 at 13. R.H. filed a motion to remand this case for lack of jurisdiction and for attorney's fees. R. 4-1.

## DISCUSSION

Four times before, the Court has considered allegations of fraudulent joinder based on bad-faith claims against insurance adjusters. *See Stacy v. Jerry Potter Trucking, Inc. et al.*, No. 14–133–ART (E.D. Ky. Dec. 4, 2014); *Cantrell v. Owners Ins. Co.*, No. 13–143–ART, 2014 WL 1168807 (E.D. Ky. Mar. 21, 2014); *Collins v. Montpelier U.S. Ins. Co.*, No. 11–166–ART, 2011 WL 6150583 (E.D. Ky. Dec. 12, 2011); *Gibson v. Am. Mining Ins. Co.*, No. 08–118–ART, 2008 WL 4602747 (E.D. Ky. Oct. 16, 2008). In each of the previous cases, the Court surveyed Kentucky law, found the law ambiguous as to whether bad-faith claims may lie against insurance adjusters, and remanded the case back to state court. But this case is different. R.H. filed her claim of bad faith against Shelter alone; so her claims against Buffin raise a slightly different question: Can a plaintiff sue an insurance adjuster for torts other than a claim of bad faith? Though the question is different, the result is the same.

I. **Fraudulent Joinder**

The doctrine of fraudulent joinder is designed to prevent plaintiffs from manipulating the rules of joinder to avoid removal. *See Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). But the burden to prove fraudulent joinder rests on the removing party—and the burden is heavy. *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013). The removing defendants must show that there is not even a "colorable basis" to predict that the plaintiff "may recover" against the nondiverse defendant. *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (internal quotation marks omitted). If "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then the claim is colorable. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation marks omitted). Courts resolve any ambiguities of state law against fraudulent joinder—that is, in favor of remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). So "[t]o establish fraudulent joinder" Shelter and Buffin must demonstrate "the absence of any possibility" that R.H. stated a claim under state law. *See* 16 James Wm. Moore, *Moore's Federal Practice* § 107.14[2][c][iv][A] (3d ed.2011).

The defendants argue that Kentucky law bars all but bad-faith claims against insurance companies. R. 9 at 11. Though the defendants do not directly confront the distinction, they seem to assume that the same prohibition applies to insurance adjusters as well. So, because R.H.'s claims against Buffin are for torts other than bad faith, the defendants argue, those claims have no colorable basis. *Id.* In support, the defendants trace Kentucky's long common law history of bad-faith claims against insurance companies. *See,*

*e.g.*, *Georgia Cas. Co. v. Mann*, 46 S.W.2d 777, 780 (1932) ("[W]e agree . . . that, if an insurer in refusing to settle acts in bad faith, it may become liable in excess of the policy limit.").

But the defendants' authorities do not go as far as they would like. In *Mann*, for example, the court never explicitly bars all other torts against insurance companies. *Id.* The numerous cases the defendants cite for the same proposition fall similarly short of definitive. Indeed, much of the language the defendants paint as comprehensive is actually limited to the context of bad-faith claims. *See, e.g.*, *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003) ("Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support *a claim for bad faith*." (emphasis added)); *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 451 (Ky. 1997) ("Mere negligent failure to settle within the policy limits or errors of judgment are insufficient *to constitute bad faith*." (emphasis added)); *Harvin v. U. S. Fid. & Guar. Co.*, 428 S.W.2d 213, 215 (Ky. 1968) (declining to recognize a cause of action for "negligent failure to settle within the policy limits" because, "*in cases of this type* . . . there must be a showing of 'bad faith.'" (emphasis added)).

Neither can the defendants show that the Unfair Claims Settlement Practices Act ("UCSPA") bars common-law causes of action against insurance adjusters. *See* R. 9 at 11 (citing *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988); KRS § 304.12-230). As another court of the Eastern District of Kentucky has already held, "the UCSPA is a single statute, rather than a comprehensive code of law." *Adkins v. Shelter Mut. Ins. Co.* (*Adkins I*), No. 5:12-173-KKC, 2014 WL 4231230, at *7 (E.D. Ky. Aug. 26, 2014) (applying Kentucky law and declining to dismiss a claim for Negligence/Gross Negligence

5

against an insurance company). So there is no reason to think that the UCSPA preempts common law causes of action. *Id.* (citing *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 505 (Ky. 2014) (noting that the UCC is thought to preempt common law causes of action because it is "a comprehensive code of law rather than a single statute or series of related statutes" (internal brackets omitted))). The defendants have provided no authority demonstrating statutory preemption.

Contrary to the defendants' assertions, some Kentucky courts have entertained fraud and misrepresentation claims against insurance companies and adjusters without relying on the bad-faith standard. *See Abney v. Kentucky Farm Bureau Mut. Ins. Co.*, No. 2009-CA-000600-MR, 2010 WL 668749, at *3 (Ky. Ct. App. Feb. 26, 2010). In *Abney*, as here, the plaintiff sued his insurance company and the insurance adjuster for negligent misrepresentation and fraud. *Id.* at *2. The plaintiff alleged that the adjuster advised him—wrongly—that the insurance company's release would not bar future claims against other parties. *Id.* at *1. The court did not dismiss the suit for failure to state a claim. *Id.* The court did not even apply a bad-faith standard. *Id.* Instead, the Court granted summary judgment because it concluded that the plaintiff "could not produce any evidence at trial" to show that the insurance adjuster "should have known" that the release would apply to all parties. *Id. See also Peoples' Cent. Transit Lines v. Myers*, 267 Ky. 277 (1937) (granting defendants' motion for summary judgment because the plaintiff's claims of fraud and misrepresentation by the adjuster lacked evidence, not because the claims were barred).

Here, R.H. claims that Buffin committed fraud and made false representations by sending a release form that purported to waive all future claims. According to R.H., the

defendants designed the ploy to trick unsophisticated parties into foregoing legitimate claims. Shelter claims that Buffin simply, and mistakenly, supplied the wrong form—that despite its name, "Indemnifying Release (Minors)," the form was not meant for minors at all, but for adults. *See* R. 9 at 5; R. 12 at 6–8. Unfortunately, this was not an isolated mistake. Pointing to another case involving Shelter, Buffin, and a different minor-plaintiff, R.H. argues that Shelter intentionally used the same form to settle 80 other claims involving minors throughout Kentucky. *See* R. 12 at 1–2; *see also Adkins v. Shelter Mut. Ins. Co.* (*Adkins II*), No. 5:12-CV-173-KSF, 2013 WL 1412331, at *2 (E.D. Ky. Apr. 8, 2013) ("[The] handling of claims was not unintentional conduct by a misinformed adjuster, but was intentional conduct by multiple adjusters . . . . Shelter admits that claims handling was intentional conduct by multiple adjusters, and there was no guidance for their exercise of discretion.").

Just like R.H., Adkins had suffered injuries during a car accident. *See Adkins I*, at *1. Shelter issued a small settlement to 17-year-old Adkins through her mother and without a court order, *id.*, accompanied by the same misleading release that Buffin gave to R.H., *id.* at *6 ("Shelter ignores the fact that the Release itself was a material misrepresentation . . . ."). But once Adkins turned 18, she contacted an attorney, filed a suit against Shelter, and obtained a higher settlement. *Id.* at *1. That Adkins was the first claimant to challenge the release after almost a decade of misuse, R.H. argues, illustrates the effectiveness of Shelter's scheme. *See* R. 4-1 at 4. Because Adkins did not sue Buffin in addition to Shelter, however, the issue of fraudulent joinder never arose in that case.

R.H. also claims that Buffin defrauded her by initiating a settlement in violation of Kentucky law—a law specifically designed to protect minors during settlement negotiations.

*See* KRS § 387.280. The defendants claim they are under no obligation to seek a court order before settling such a claim with a minor. *See* R. 9 at 5. But a court of the Eastern District of Kentucky has already disagreed. *Adkins I*, at *1 (citing KRS 387.280) ("Kentucky law requires court approval for settlements involving minors."). Indeed, since the "settlement" in this case, Shelter has adopted the practice of seeking court orders approving all settlements with minors. *See Adkins II*, at *4. If R.H.'s claim is not even colorable, it is hard to imagine why Shelter would waste resources seeking court orders it has no obligation to seek. *See id.*

Regardless, it is not R.H.'s obligation, at this stage, to prove that her claims against Buffin will prevail or even that they are colorable. *Kent State Univ. Bd. of Trustees*, 512 F. App'x at 489. That burden belongs to the defendants. *Id.* To the extent that Kentucky law remains ambiguous on R.H.'s claims against Buffin, this Court must resolve those ambiguities in favor of remand. *Coyne*, 183 F.3d at 493. As the defendants have failed to demonstrate that there is no reasonable possibility that R.H. has stated a claim under Kentucky law, this Court will grant R.H.'s motion to remand.

## II.     Attorney's Fees

When a court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court has discretion to grant fees to the opposing party if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Though the Court will grant R.H.'s motion to remand this case, it cannot say that the defendants' removal lacked an objectively reasonable basis. Because the current status of tort claims against insurance companies and their adjusters remains in some

doubt under Kentucky law, this is not one of the rare cases where an award of attorney's fees is justified.

## CONCLUSION

Parties, just like armies, cannot always choose their field of battle. Because this is a Court of limited jurisdiction, the removing party has the burden to demonstrate federal question or diversity jurisdiction. To establish diversity jurisdiction by way of proving fraudulent joinder requires showing that the plaintiff's claim against the non-diverse defendant is not even colorable under state law. Where, as here, the party fails to carry that burden, the Court must send this dispute back to the battlefield on which it arose.

Accordingly, it is **ORDERED** that the plaintiff's motion, R. 4, is **GRANTED** as to remand, but **DENIED** as to attorney's fees. This matter is **REMANDED** to the Pike Circuit Court and **STRICKEN** from this Court's active docket.

This the 18th day of December, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge